NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| REGINA T. BABICE, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 16-06254-BRM |
| COMMISSIONER OF SOCIAL SECURITY, | : **OPINION** |
| Defendant. | : |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Regina T. Babice's ("Babice") appeal from the final decision of the Commissioner of Social Security ("Commissioner"),[1] denying her application for disability insurance benefits. Having reviewed the administrative record and the submissions filed in connection with the appeal pursuant to Local Civil Rule 9.1 and having declined to hold oral argument pursuant to Federal Civil Rule 78(b), for the reasons set forth below and for good cause shown, the matter is **REMANDED** for further proceedings.

**I.    BACKGROUND**

On April 8, 2013, Babice filed a Title II application for a period of disability and disability insurance benefits, alleging disability since January 16, 2012. (Tr. 221, 246, 259.) The claim was denied on June 10, 2013, and denied upon reconsideration on January 6, 2014. (Tr. 155-59, 171-

---

[1] Upon the Appeals Council's Order denying Babice's request for a review of the Administrative Law Judge's ("ALJ") decision, the ALJ's decision became the final decision of the Commissioner. (Tr. 7.)

75.) Begina filed a written request for hearing on January 23, 2014. Babice and her husband Nicholas Babice appeared and testified at the hearing held on December 17, 2015. (Tr. 46-47.) At the hearing, Babice's attorney requested an additional fourteen days to submit additional medical records. (Tr. 116.) Post-hearing medical records were received and reviewed. (Tr. 11-12.)

On February 11, 2016, the ALJ issued an unfavorable decision. (Tr. 23.) The decision provides, in relevant part:

> **FINDINGS OF FACT AND CONCLUSIONS OF LAW**
>
> After careful consideration of the entire record, I make the following findings:
>
> **1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2017.**
>
> **2. The claimant has not engaged in substantial gainful activity since January 16, 2012, the alleged onset date (20 CFR 404.1571 *et seq.*).**
>
> **3. The claimant has the following severe impairments: degenerative disc disease of the cervical and lumbar spine, status post arthroscopy for labral tear of the right hip, and dysfunction/osteoarthritis of the bilateral knees, hips, shoulder and pelvis (20 CFR 404.1520(c)).**
>
> The documented medical evidence of record consists of clinical and diagnostic findings which when considered in the aggregate, support a conclusion that the above impairments cause significant limitation on the claimant's ability to perform work activities during the period being adjudicated (Exhibits 1F, 2F, 3F, 4F, 5F, 6F, 7F, 8F, 9F, 10F, 11F, 12F, 13F, 14F, 15F, 16F, 17F, 18F, 19F, 20F, 21F, 22F, 23F, 24F, 25F, 26F, 27F, 28F, 29F, 30F, 31F, 32F, 33F, 34F, 35F, 36F, 37F, 38F, 39F, 40F, 41F, 42F, 43F, 44F, 45F and 46F).
>
> The claimant's medically determinable mental impairments of depression and anxiety, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere.
>
> In making this finding, I have considered the four broad functional

areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria.

The first functional area is activities of daily living. In this area, the claimant has mild limitation. She was traveling with her husband for three years. She can prepare simple meals. She is able to do laundry and light cleaning (Exhibit 1lE).

The next functional area is social functioning. In this area, the claimant has no limitation. She did not appear to have any difficulty traveling amongst others. She also reported that she found physical therapy treatment centers in different states. She is able to shop in stores and by phone for food and clothes. She talks on the phone or texts with family and friends. She gets along very well with authority figures (Exhibit 1lE).

The third functional area is concentration, persistence or pace. In this area, the claimant has no limitation. She said that she spends the day watching television and reading. She is able to pay bills, handle a savings account, count change and use a checkbook. She can pay attention as long as she needs to. She follows written and spoken instructions very well (Exhibit 1lE).

The fourth functional area is episodes of decompensation. In this area, the claimant has experienced no episodes of decompensation which have been of extended duration.

The claimant failed to even mention any mental complaints at the hearing. She seems to have been treated with only medication by her primary care physician with no problems. Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth area, they are nonsevere (20 CFR 404.1520a(d)(l)).

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments

(SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis.

John Conneran, Ph.D., a State agency medical consultant, completed a Psychiatric Review Technique found that the claimant has mild restriction of activities of daily living, no difficulties in maintaining social functioning, no difficulties in maintaining concentration, persistence or pace, and no repeated episodes of decompensation (Exhibit 2A). Thomas Yared, M.D., a State agency medical consultant, completed a Psychiatric Review Technique affirming Dr. Conneran's earlier opinion that the claimant's mental impairments are not severe (Exhibit 3A). I assign significant weight to Drs. Conneran and Yared's opinion as they are well supported by the longitudinal medical record and her testimony. The claimant did not mention any mental limitations or symptoms at the hearing.

In May 2013, Sandra Prince-Embury, Ph.D., completed a Psychiatric Report finding that the claimant had no limitation in understanding and memory, sustained concentration and persistence, social interaction, or adaptation due to anxiety or depression (Exhibit 26F). I assign significant weight to Dr. Prince-Embury's opinion as it consistent with her lack of any significant mental health treatment and her attributing reported limitations to her physical conditions rather than any mental condition.

4. **The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments** in **20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).**

The claimant's representative does not contend that a listing has been met or equaled. Moreover, no treating or examining physician has mentioned any findings equivalent in severity to any listed impairment, nor are such findings indicated or suggested by the medical evidence of record. Nevetheless, I have carefully considered the specific requirements of the relevant listings, specifically 1.02 and 1.04, and is satisfied that no listing is met or equaled.

Particular attention was given to listing 1.02 for major dysfunction of a joint. However, the specified criteria required of the listing were not demonstrated by the available medical evidence. Specifically, the listing requires gross anatomical

deformity and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and finding on appropriate medically acceptable imaging of joint space narrowing, bony destruction or ankylosis of the affected joint. The listing also requires involvement of one major peripheral joint resulting in inability to perform fine and gross movements effectively as defined in l.00B2c and/or inability to ambulate effectively as defined in l.00B2b. In this case, the evidence does not demonstrate that the claimant has the degree of difficulty in performing fine and gross movements as defined in 1.00B2c or the degree of difficulty in ambulating as defined in l.00B2b.

The medical evidence does not establish the requisite evidence of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis as required under listing 1.04. Moreover, there is no evidence that the claimant's back disorder has resulted in an inability to ambulate effectively, as defined in l.00(B)(2)(b).

. . . .

**DECISION**

Based on the application for a period of disability and disability insurance benefits filed on April 8, 2013, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.

(Tr. 26-38.)

The Appeals Council denied Babice's request for review on July 28, 2016. (Tr. 7-10.) Therefore, the ALJ decision became the final decision of the Commissioner, and on September 30, 2016, Babice brought this appeal. (ECF No. 1.)

## II. STANDARD OF REVIEW

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*,

239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive on a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). This Court must affirm an ALJ's decision if it is supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). To determine whether an ALJ's decision is supported by substantial evidence, this Court must review the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). However, this Court may not "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (citation omitted). Accordingly, this Court may not set an ALJ's decision aside, "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citations omitted).

### III.    THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

Under the Social Security Act, the Social Security Administration is authorized to pay Social Security Insurance to "disabled" persons. 20 C.F.R. § 404.1520(a). A person is "disabled" if he is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). A person is unable to engage in substantial gainful activity when his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of "substantial gainful work that exists in the national economy." *Id.*

Regulations promulgated under the Social Security Act establish a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 416 .920(a)(1). First, the ALJ determines whether the claimant has shown that he or she is not currently engaged in "substantial gainful activity." *Id.* §§ 404.1520(b), 416.920(b); *see Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *See* 20 C.F.R. § 404.1520(b); *see also Bowen*, 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c); *see Bowen*, 482 U.S. at 146-47 n.5. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Id.* A claimant who does not have a severe impairment is not considered disabled. *Id.* at § 404.1520(c); *see Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).

Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that his or her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See id.* at §§ 404.1520(d), 416.920(d); *see also Bowen*, 482 U.S. at 146-47 n.5. If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. § 404.1526(a). If there is more than one impairment, the ALJ then must consider whether the

combination of impairments is equal to any listed impairment. *Id.* An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams*, 970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f); *Bowen*, 482 U.S. at 141. Step four involves three sub-steps:

> (1) the ALJ must make specific findings of fact as to the claimant's [RFC]; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the [RFC] to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

*Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000) (citations omitted). When determining RFC, "[a]n ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Hoyman v. Colvin*, 606 F. App'x 678, 679-80 (3d Cir. 2015) (quoting *Plummer*, 186 F.3d at 429). Unsupported diagnoses are not entitled to great weight. *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991). Moreover, an administrative law judge must provide the reason for providing more or less weight to the evidence. *See Fragnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001).

The claimant is not disabled if his RFC allows him to perform his past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). However, if the claimant's RFC prevents him from doing so, an administrative law judge proceeds to the fifth and final step of the process. *Id.* The final step requires the administrative law judge to "show [that] there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical

impairments, age, education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428. In doing so, "[t]he ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled." *Id.* (citation omitted). Notably, an administrative law judge typically seeks the assistance of a vocational expert at this final step. *Id.* (citation omitted).

The claimant bears the burden of proof for steps one, two, and four. *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000). Neither side bears the burden of proof for step three "[b]ecause step three involves a conclusive presumption based on the listings." *Id.* at 263 n.2 (citing *Bowen*, 482 U.S. at 146-47 n.5). An administrative law judge bears the burden of proof for the fifth step. *See id.* at 263.

## IV. DECISION

### A. Severe Mental Impairment

Babice argues the ALJ did not make a proper finding at step two because her anxiety and depression are considered "severe" impairments. (ECF No. 35 at 11.) She argues this determination "tainted the findings at Steps 3 and 5." (*Id.*) The Commissioner argues there is substantial evidence in the record to support the ALJ's finding that Babice did not have a severe mental impairment. (ECF No. 37.)

A claimant bears the burden of proving she has a severe impairment at step two of the sequential process. *Sykes*, 228 F.3d at 263. An "impairment or combination of impairments" is not severe if it does not "significantly limit[] your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c), 404.1522. "Basic work activities" include "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b). Examples include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

> (2) Capacities for seeing, hearing, and speaking;
>
> (3) Understanding, carrying out, and remembering simple instructions;
>
> (4) Use of judgment;
>
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
>
> (6) Dealing with changes in a routine work setting.

*Id.* A mental impairment is generally considered nonsevere if the degree of functional limitation in the following four functional areas is "none" or "mild": "[u]nderstand, remember or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. § 404a(c)(3), (d)(1).

Here, the ALJ's determination that Babice's "medically determinable mental impairments of depression and anxiety, considered singly and in combination, do not cause more than minimal limitation in [her] ability to perform basic mental work activities and [is] therefore nonsevere," is supported by substantial evidence in the record. (Tr. 28.) The record supports the ALJ's finding as to the first functional area, with respect to activities of daily living. Indeed, Babice traveled with her husband for three years, could prepare simple meals, launder clothes, and perform light cleaning around the house. (Tr. 29, 290-92.) Most of Babice's alleged limitations were limited by physical, rather than mental issues. (Tr. 290-92.) With respect to her social functioning, she did not have difficulty traveling, as she found physical therapy treatment centers in different states. She shopped in stores, talked on the phone and texted with family and friends, and admitted getting alone with authority figures. (Tr. 29, 60-62, 96-98, 290, 293-94.) As to the third function area, concentration, persistence, or pace, Babice admitted she spends the day watching television and reading. (Tr. 293-94.) She can pay bills, maintain a savings account, count change, and use a

checkbook. (Tr. 29, 293.) Further, she admitted she could pay attention "as long as [she] need[ed] to," and that she followed written and spoken instructions "very well." (Tr. 29, 295.) As to episodes of decompensation, Babice experienced no episodes of decompensations of an extended duration. (Tr. 29.)

In addition to the record supporting that Babice's limitations of the four functional areas was mild or none, Babice failed to mentation any mental impairments at the hearing. Further, Babice's opposition also lacks evidence to support her argument that her depression and anxiety were severe. The opposition merely states she was prescribed medication for her disorders and that a psychiatrist found her to have "anxiety and depression related to ongoing physical problems. She was tearful and had trouble staying focused. Had anxiety attacks and is on meds." (ECF No. 35 at 13.) This is insufficient to support a finding that her anxiety and depression was severe. Even assuming it was sufficient, the ALJ's decision was supported by substantial evidence in the record therefore, this Court may not "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams*, 970 F.2d at 1182. This Court may not set an ALJ's decision aside, "even if [it] would have decided the factual inquiry differently." *Hartranft*, 181 F.3d at 360. Lastly, Babice's own psychiatrist, Sandra Pric-Embury, Ph.D. opined she had no limitation in the ability to perform work-related mental activities. (Tr. 957.)

Because there is substantial evidence to support the ALJ's findings that Babice's mental impairments were nonsevere, the Court finds no error at step two.

### B. Whether Impairments Equal the Criteria of a Listed Impairments

Babice argues her seven severe medically determined impairments meet or equal the listings at step three. (ECF No. 35 at 13.) She further argues "[a] decision must match the evidence to the specific Listings requirements for both the individual and combined impairments. Without

11

the analysis there cannot be a meaningful review." (*Id.* at 15.) The Commissioner argues "the ALJ considered the evidence relevant to Listings 1.02 and 1.04, and substantial evidence demonstrates that [Babice's] impairments were not of listing-level severity." (ECF No. 37 at 7.)

The listings articulated in 20 C.F.R. Pt. 404, Subpt. P., App. 1, are descriptions of various physical and mental illnesses and abnormalities, categorized by the body system they affect. *Sullivan v. Zebley*, 493 U.S. 521, 529–30 (1990). All impairments are defined "in terms of several specific medical signs, symptoms, or laboratory test results." *Id.* at 530. "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.*; *see* Social Security Ruling (SSR) 83—19, Dep't of Health & Human Servs. Rulings 90 (Jan. 1983) ("An impairment meets a listed condition . . . only when it manifests the specific findings described in the set of medical criteria for that listed impairment."); 20 C.F.R. § 416.926(a) (1989) (noting that a claimant's impairment is "equivalent" to a listed impairment "if the medical findings are at least equal in severity and duration to the criteria of any listed impairment"). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531–32 (citing SSR 83–19, at 91–92 ("[I]t is incorrect to consider whether the listing is equaled on the basis of an assessment of overall functional impairment. . . . The functional consequences of the impairments . . . irrespective of their nature or extent, cannot justify a determination of equivalence.").

The Third Circuit requires "the ALJ to set forth the reasons for [her] decision" for her step-three analysis. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000). Conclusory statements have been found to be "beyond meaningful judicial review." *Cotter v.*

*Harris*, 642 F.2d 700, 704–05 (3d Cir. 1981). In *Burnett*, the Third Circuit remanded the matter because the ALJ made only conclusory statements without mentioning any specific listed impairments or explaining his reasoning. *Burnett*, 220 F.3d at 119–20 (finding "although [Plaintiff] has established that she suffered from a severe musculoskeletal [impairment], said impairment failed to equal the level of severity of any disabling condition contained in Appendix 1, Subpart of Social Security Regulations No. 4."). In *Torres v. Comm'r of Soc. Sec.*, 279 F. App'x 149, 152 (3d Cir. 2008), the court found "the ALJ failed at step three by failing to consider [Plaintiff's] impairments in combination when determining medical equivalence." Further, the "ALJ failed to combine [Plaintiff's] many medical impairments and compare them to analogous Appendix 1 listings." *Id.* The ALJ's entire analysis consisted of one cursory paragraph stating:

> Regarding steps two and three, the evidence establishes the existence of a "severe" impairment involving left-eye blindness, diabetes, hepatitis C and cirrhosis, degenerative disc disease of the lumbar spine, bronchitis, and depression, but does not disclose any medical findings which meet or equal in severity the clinical criteria of any impairment listed in Appendix 1, Subpart P to Regulations No. 4.

*Id.*

Here, the ALJ's entire analysis consisted of three paragraphs, only one which directly addressed the impairments and listed impairments, stating:

> The claimant's representative does not contend that a listing has been met or equaled. Moreover, no treating or examining physician has mentioned any findings equivalent in severity to any listed impairment, nor are such findings indicated or suggested by the medical evidence of record. Nevetheless, I have carefully considered the specific requirements of the relevant listings, specifically 1.02 and 1.04, and is satisfied that no listing is met or equaled.
>
> Particular attention was given to listing 1.02 for major dysfunction of a joint. However, the specified criteria required of the listing were not demonstrated by the available medical evidence. Specifically, the listing requires gross anatomical

> deformity and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and finding on appropriate medically acceptable imaging of joint space narrowing, bony destruction or ankylosis of the affected joint. The listing also requires involvement of one major peripheral joint resulting in inability to perform fine and gross movements effectively as defined in l.00B2c and/or inability to ambulate effectively as defined in l.00B2b. *In this case, the evidence does not demonstrate that the claimant has the degree of difficulty in performing fine and gross movements as defined in 1.00B2c or the degree of difficulty in ambulating as defined in l.00B2b.*
>
> The medical evidence does not establish the requisite evidence of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis as required under listing 1.04. Moreover, there is no evidence that the claimant's back disorder has resulted in an inability to ambulate effectively, as defined in l.00(B)(2)(b).

(Tr. 30 (emphasis added).) The ALJ's step three analysis is unquestionably conclusory. She failed to directly compare the seven severe medically determined impairments to any listing in 20 C.F.R. Pt. 404, Subpt. P., App. 1. She also failed to explain why the impairments do not meet or equal the Listings individually or in combination. Indeed, the ALJ never combined the impairments and compared them to the listed impairments. The ALJ's conclusory statements are "beyond meaningful judicial review." *Cotter*, 642 F.2d at 704–05. Because the Court has no way of reviewing the ALJ's step three ruling, the Commissioner's final decision is **VACATED**, and the case is **REMANDED** to the ALJ for a discussion of the evidence and an explanation of reasoning supporting a determination that Babice's severe impairments are not equivalent to a listed impairment. On remand, the ALJ shall fully develop the record and articulate her findings at step three, and provide an analysis articulating how the severe impairments in combination do not meet or equal an Appendix 1 listing.

Having decided to remand the case at step three, the Court has no obligation to reach Babice's other arguments at steps four and five. *Vivaritas v. Comm'r of Soc. Sec.*, 264 F. App'x.

155, 156–57 (3d Cir. 2008) ("Inasmuch as further development of the record and the ALJ's decision based on that record may make consideration of steps four and five of the five-step sequential evaluation procedure unnecessary, we do not reach [plaintiff's] other challenges to the ALJ's decision.").

**V. CONCLUSION**

For the reasons set forth above, the Court **VACATES** the Commissioner's final determination and **REMANDS** the matter for further proceedings consistent with this opinion.


**Date:** November 29, 2018                        */s/ Brian R. Martinotti*
                                                  **HON. BRIAN R. MARTINOTTI**
                                                  **UNITED STATES DISTRICT JUDGE**